UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

TANGO BRANDED　　　　　　　　　　　　　Case No.: 06-59217
ENTERTAINMENT, LLC,　　　　　　　　　　Chapter 11

　　　　　Debtor.　　　　　　　　　　　　　Honorable Walter Shapero
_____/

## OPINION GRANTING IN PART DEBTOR'S MOTION TO EXTEND TIME TO ASSUME OR REJECT LEASE

Debtor's primary, if not exclusive, business was performing various services by way of a contract with Daimler Chrysler. It did so out of premises sub-leased from Live Nation World Wide, Inc., (Lessor) located in New York City ("Lease"). Differences arose between Debtor and Daimler Chrysler as the result of which the latter terminated the contract. That resulted in a suspension of Debtor's business operations which in turn led to its filing of this chapter 11 bankruptcy on December 26, 2006. The monthly rental under the Lease is approximately $76,000 for the some 23,000 square feet of space involved. The Lease has some seven or so years left to run. As of the commencement of this case Lessor was holding a security deposit of about $378,000. Pre-petition unpaid rentals were some $170,000. Post-petition the rentals due for January, February, March, and April, have not been paid. Debtor has few, if any, funds to pay any rentals. The total unpaid rentals presently exceed the security deposit amount and the differential between the amount of that security deposit and the cumulative unpaid rentals will increase each month hereafter. Debtor's motion seeks an extension of the period within which it must assume or reject the Lease to May 23, 2007, such being an extension of some 27 days from the end of the basic 120 day period (ending on or about April 26,

1

2007) which 365(d)(4) gives a debtor/lessee to make up its mind whether to assume or reject the Lease.

Extensions are permitted "for cause." The cause asserted by Debtor primarily consists of its assertions that the Lease rental rate is some six to nine dollars per square foot per year less than the current market rental rates in New York City, and, that if so (and it is, and has been actively engaged in marketing the Lease), it anticipates needing the indicated additional time to make a deal with an entity to whom it can assign the lease and realize that differential for the benefit of the bankruptcy estate. If the differential were say, $5.00 per square foot, the rent differential over seven years, for instance, would be a gross of $800,000, over time - the present value of which would be less. Debtor also asserts that it is in active negotiations with Daimler Chrysler over the termination of the Debtor's contract as well as an issue of the ownership and value of certain intangibles involved in the contract, with a real possibility of realizing a material sum for the bankruptcy estate.

Lessor objects, pointing to the unpaid rentals for some seven months, those unpaid amounts being in excess of the security deposit, and the speculative nature of Debtor's only possible sources of funds to eventually pay any of the unpaid rent over and above the amount of the security deposit, as well as, the affirmative obligation of Debtor under 365(d)(3) to pay the rent until the lease is assumed or rejected. Aside from its defenses to Debtor's motion, Lessor has also filed a motion to compel Debtor to assume or reject the lease, to compel adequate protection payments, and to modify the stay, <u>nunc pro tunc</u>, for application of the security deposit to unpaid pre-petition obligations. Lessor's said motion has not yet been heard though the issues it raises have been part of the arguments and deliberations on Debtor's motion extension.

The elements of "cause" for an extension are set out Service Merchandise Company, Inc., 256 B.R. 744 (Bkrtcy.M.D.Tenn., 2000). One of them is whether, or the extent to which, the Lessor will suffer damage that may not be compensable under the Code. Id. at 748. That particular element is akin to and bound up with Lessor's argument that the failure of the Debtor to comply with the mandate of 365(d)(3) either outweighs all other considerations, or in and of itself affords a defense to any extension, regardless of any other circumstances. The Court does not agree. Rather, this Court agrees with that line of authorities epitomized by the Court of Appeals in In re Southwest Aircraft Services, Inc., 831 F.2d 848 (9th Cir. 1987) where the Court stated at page 854:

> We believe that Congress intended the bankruptcy courts to have discretion to consider all of the particular facts and circumstances involved in each bankruptcy case and to decide whether the consequences of a violation of subsection (d)(3) should be forfeiture of the unassumed lease, some other penalty, or no penalty at all. Accordingly we hold that the failure to make payments under subsection (d)(3) constitutes one element to be considered along with all the other relevant factors, in determining whether cause exists under subsection (d)(4) to extend the 60 day period for assumption or rejection.

(The Court concludes that the enactment of BAPCPA does not change this analysis.) Aside from receiving its entitled to rent under the Lease, (and if Debtor is right about current square foot rental rates), Lessor obviously has a legitimate and strong interest in having the lease terminated or rejected (and as quickly as possible), so it, rather than Debtor, could capitalize on those apparently increasing market rental rates. Properly evaluated for purposes of this Motion, Lessor's primary exposure and risk here is the amount by which its unpaid Lease obligations will exceed its security deposit.

3

06-59217-wsd    Doc 71    Filed 04/10/07    Entered 04/10/07 16:48:48    Page 3 of 4

The likelihood Debtor will continue its business is relatively small so this case has most to do with the extent to Debtor will be able to realize something material (that balances the Lessor's said risk) from an assumption and assignment of the lease and sale of its intangibles. When that might occur is a monthly moving target. Time is thus a crucial factor in this situation, as well as verifiable authentication of the actuality and status of its indicated ongoing Lease and asset marketing efforts. Taking into account the potential gains to Debtor and its creditors (and indeed to Lessor to some extent) versus the risks and potential loss to Lessor and the other relevant factors, most of which favor the Debtor, at least for the relatively modest extension sought, the Court concludes it will extend the time for Debtor to assume or reject the lease to the requested date of May 23, 2007, but, subject to it being shortened, and/or otherwise dealt with, under the following terms and conditions:

(1) An evidentiary hearing will be conducted on April 25, 2007, at 1:30 p.m., to hear evidence on the status of, and Debtor's progress in marketing the (and selling or liquidating any of its other assets or causes of action); and,

(2) If at the close of said hearing it does not appear either (a) that Debtor has actually obtained an agreement to assign the lease, or (b) there is substantial likelihood that Debtor will be able to obtain such an agreement in sufficient time to enable it to file a motion to assume and assign the lease by May 23, 2007, the Court may take further action, including, but not limited to, (i) accelerating termination or rejection of the Lease to a date prior to May 23, 2007, (ii) requiring certain rental payments to be made to the Lessor as a condition to having the extension continue to May 23, 2007;

The Court makes no ruling at this time relative to past, present or future use or application of the security deposit. The referred to Lessor's motion is set for hearing at the April 25, 2007, hearing date and time above set forth. Debtor shall promptly prepare an appropriate order.

**Signed on April 10, 2007**

                                                  **/s/ Walter Shapero**
                                                  **Walter Shapero**
                                                  **United States Bankruptcy Judge**